WILLIAM E. FARNEY, M.D., Plaintiff-Appellee, *v.* JOAN G. ANDERSON, Director of the Department of Registration & Education, *et al.,* Defendants-Appellants.

Fourth District   No. 14552

Opinion filed January 20, 1978.

William J. Scott, Attorney General, of Chicago (George W. Lindberg and Paul J. Bargiel, Assistant Attorneys General, of counsel), for appellants.

Pree & Pree, of Springfield, for appellee:

Mr. JUSTICE WEBBER delivered the opinion of the court:

This is an appeal from the order of the circuit court of Sangamon County, sitting in administrative review, reversing an order of the Department of Registration & Education (Department) which suspended the plaintiff's medical license for a period of six months.

The Department filed its complaint against plaintiff and alleged, in substance, that plaintiff, a licensed physician and surgeon, had dispensed certain controlled substances for no legitimate medical reason. The prayer of the complaint was that plaintiff's license to practice medicine be suspended or revoked pursuant to section 16(4) of the Medical Practice Act (Ill. Rev. Stat. 1975, ch. 91, par. 16a(4)), which provides for such suspension or revocation for "engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public."

In Accordance with section 17.02 of the Act (Ill. Rev. Stat. 1975, ch. 91,

par. 16b.02) a hearing was conducted by the Illinois State Medical Disciplinary Board which recommended the six-months' suspension. The Department approved the recommendation and plaintiff sought administrative review under section 17.08 of the same statute. The circuit court reversed the Department.

Central to the decision in this cause is the following finding of the trial court in its order of reversal: "There is no evidence in the record before this Court, other than the testimony and opinion of the Plaintiff, Dr. Farney, to support the finding of the agency that there was 'no legitimate medical reason for issuing any one or all of the aforementioned prescriptions.' "

This leads to a broader question concerning the nature of evidence before an administrative tribunal and the manner in which a reviewing court should deal with it.

At the hearing before the Medical Disciplinary Board, the panel was composed of three doctors. Testimony was taken from two witnesses, Edward Doyle, who was an investigator for the Illinois Legislative Investigating Commission, and the plaintiff, Dr. Farney.

Doyle testified that he was an undercover agent who, along with others, was looking into the abuse of medical prescriptions by Illinois physicians. He used the alias of "Dennis Harvey." Doyle presented himself to Dr. Farney and stated that he had become a heroin addict in the Marine Corps; he requested a prescription for Preludin, which is a Schedule III controlled substance. It is a stimulant, also sometimes used for weight control. Doyle was not in fact an addict.

During this first visit of Doyle, Dr. Farney weighed him; the Department concedes that Doyle was slightly overweight at the time. Farney also took his blood pressure and listened to his heartbeat through his outer clothing. Farney gave him a prescription for 45 tablets of Preludin and told him to return in one month. Doyle further testified that he sought more Preludin than that prescribed, telling Farney that he was going to go to other doctors in the area and use different names to obtain further prescriptions.

Doyle returned for a second visit about a month later. No further physical examination was made at that time. In addition to Preludin, Doyle asked for a prescription for Dilaudid, but upon being told by Farney that this was impossible, he asked for Dolophine. This was also refused, but Farney did write prescriptions for 60 more Preludin and 50 tablets of Tuinal, a depressant and also a Schedule III controlled substance. Doyle indicated to Farney that he was going to trade some of these drugs for Dilaudid and Farney cautioned him that trading of drugs was a risky business.

Dr. Farney testified that Doyle told him that he wanted to lose weight

because he had a back injury from Viet Nam which was bothering him. He further stated that he performed all the examination necessary for the prescription of a diet pill. He denied that he told Doyle to return in a month or that there was any conversation about trading pills or about Doyle being an addict; he admitted saying in substance that the pill thing was getting out of hand.

One of the panel asked Dr. Farney if he ever refused to prescribe pills and he answered in the affirmative; when asked why he did not refuse Doyle, he answered, "Because I believed he was honest. I believed he was a Viet Nam veteran. I believed he served his country. I thought I was doing a service to him and the country."

There was some further nattering between the panel and Dr. Farney over techniques of examination and other medical esoterica, but Farney remained firm that in his professional opinion there was a legitimate medical reason for the prescriptions. The prescription orders were introduced and that was all the evidence before the Board.

The question of expert testimony and opinion evidence before administrative tribunals is not without problems. These are neatly summarized in section 353 of McCormick's Handbook of the Law of Evidence (2d ed. 1972), by Edward W. Cleary:

> "The general admissibility of expert and nonexpert testimony in administrative hearings is no longer open to question, but doubt still exists regarding the weight an expert's views should be given. For a time agencies and reviewing courts followed early judicial reasoning and refused to hear expert testimony on the very question that the agency was created to decide. Other courts took the position that it would be unfair for an agency to rely on its own expertise or the expert testimony of its staff when their opinions were contradicted by outside experts. In rejecting these contradictory appeals to ignorance, courts now recognize legislative intention to establish expert agencies. Therefore, agency decisions which rely on the agency's own expertness are upheld when the respondent offers no contrary expert testimony or when expert testimony offered by staff members and outside experts conflicts. Some courts have gone even further and given excessive deference to the knowledge of the administrative agency by upholding its decision in the face of uncontradicted expert testimony to the contrary. However, the demands of fairness are not generally accepted, and an agency seeking to rely on its expertise must present expert testimony subject to cross-examination on the record or give the respondent fair notification that official notice will be taken of such 'facts.' "

■■ In the case at bar, the only evidence presented by the Department

was the testimony of the undercover agent and the prescription orders. The only expert testimony came from the respondent in his own behalf. In a tortured piece of reasoning the Department claims that expert medical testimony for the Department would serve only to corroborate Doyle. Such a statement ignores completely that it might also at best negate, and at worst, conflict with, the testimony of the respondent.

In *Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 346, 106 N.E. 2d 722, on a similar set of facts, the supreme court reversed a finding in favor of the Department, saying:

> "The record is completely silent as to any expert testimony relating to the respondent's professional conduct; or relating to his diagnosis of Mrs. Boehne, whether honest or fraudulent; or relating to the medicinal or therapeutic value of the 'Koch Treatment.' The medical hearing committee undertook to draw upon their own professional skill and scientific training to produce the findings entered against the respondent herein."

Other cases in Illinois have followed the *Smith* doctrine. In *Schyman v. Department of Registration & Education* (1956), 9 Ill. App. 2d 504, 133 N.E. 2d 551, *cert. denied* (1957), 352 U.S. 1001, 1 L.Ed 2d 545, 77 S.Ct. 557, the revocation of the plaintiff's license was upheld for dispensing a liquid which he claimed was a cure for diabetes. Expert testimony was introduced at the administrative hearing by the Department, *viz.*, that of an analytical chemist who had made a qualitative analysis of the liquid, and that of a professor of medicine at the University of Illinois. The court commented, "While it is true that the plaintiff denies much of the testimony we are of the opinion that this denial does not weaken the clear and convincing character of the defendants' case." 9 Ill. App. 2d 504, 522, 133 N.E. 2d 551.

In *Rutledge v. Department of Registration & Education* (1966), 77 Ill. App. 2d 103, 222 N.E.2d 195, the plaintiff's license was revoked by the Department on recommendation of the Medical Examining Committee. The revocation was affirmed by the circuit and appellate courts, but no record showed expert testimony presented by the Department. The appellate court noted, "The witness called on behalf of the relator [Department] included Velma Meyer, Dr. Cutter [the treating physician after plaintiff], three other doctors, and the former State's Attorney for Peoria County. The witnesses called on behalf of respondent included Dr. Rutledge, Helen Kelso (his office assistant), and Dr. Burton Finne." 77 Ill. App. 2d 103, 115, 222 N.E.2d 195.

The *Rutledge* court summarized;

> " 'In a proceeding so serious, due process of law requires a definite charge, adequate notice, and a full, fair and impartial hearing.' [Citation.] The findings of the committee 'must be based on

evidence presented in the case, with an opportunity to all parties to know the evidence to be submitted or considered, to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal, and nothing can be treated as evidence which is not introduced as such.' *Fleming v. Illinois Commerce Commission*, 388 Ill. 138, 149 57 N.E.2d 384 (1944).

We believe this record meets the foregoing tests and, therefore * * *." 77 Ill. App. 2d 103, 123, 222 N.E.2d 195.

The Department seeks to distinguish all of the foregoing cases factually, but such an effort is wide of the mark. What we are concerned with in the instant case is procedure; *Smith* is directly in point, and in *Schyman* and *Rutledge,* correct procedure was followed. We are at a loss to understand why the Department was so meticulous with Drs. Schyman and Rutledge, but elected to treat Dr. Farney as a *res ipsa loquitur* analogy.

■■ ■ The underlying, but perhaps unspoken, reason for requiring expert evidence by the Department is the existence of judicial review of the decisions of the Medical Disciplinary Board as provided in section 17.08 of the Medical Practice Act (Ill. Rev. Stat. 1975, ch 91, par. 16b.08). While it may seem idle and foolish to a board composed of physicians to present elementary questions of medicine to them by way of testimony of one of their own brethren, yet it is far from idle to a court, not trained in medicine, which is called upon to determine the manifest weight of the evidence. (*Kerr v. Police Board of Chicago* (1974), 59 Ill. 2d 140, 319 N.E.2d 478.) To hypothesize: Let suppose that a single physician were called upon to review a record of the Attorney Registration and Disciplinary Commission. What might appear patent to the Commission could likewise be delphically obfuscating to the physician. To determine manifest weight of evidence in an area not of one's own training and education becomes a difficult task at best, and it becomes impossible when only one pan of the scales is filled. The *Smith* court put it tersely: "This court possesses neither medical learning nor powers of telepathy. We are, therefore, unable to medically evaluate the testimony in this record or to know what scientific appraisal of it was made by the medical committee." 412 Ill. 332, 349, 106 N.E.2d 722.

■■ Even assuming everything that Doyle told Farney were true, *i.e.,* that he was an addict, that he was going to trade pills, *etc.,* and assuming further that the reviewing court believed it all, it would still be unclear whether no valid medical reason for the prescriptions existed. The method employed by Farney might be the accepted one for treating addicts; perhaps not, but it is not for a layman, uneducated in medicine, to say. Expert testimony, whether coming down on the positive or negative side of Farney's treatment, is essential. We reiterate that the only

medical testimony in the record is that of Farney, and while it might be called self-serving and thus suspicious, it is not offset by any other expert opinion.

We hold no opinion as to the conduct of Dr. Farney. But be he quack or be he a Hippocratic saint, he possesses a license to practice medicine. It is beyond dispute that such a license is a valuable property right and is protected by the due process clauses of the United States and Illinois Constitutions (see *Smith*, at 340).

■■ We therefore conclude that the substitution of subjective analysis on the part of the medical panel in place of expert medical opinion fatally tainted the proceedings.

Since we have taken the view that there is no proper record for review, we need not address ourselves to the question of the manifest weight of the evidence which is extensively argued in the briefs of the parties.

The trial court was correct and it is affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.