HARVEY PRE-SCHOOL FOR EXCEPTIONAL CHILDREN, Plaintiff-Appellee, *v.* WILLIAM M. BOWLING, Director of the Department of Labor, *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 79-513

Opinion filed June 17, 1980.

William J. Scott, Attorney General, of Chicago (Russell C. Grimes, Jr., Assistant Attorney General, of counsel), for appellants.

Susan M. Sitter, of Legal Advocacy Service, and Frederick J. Daley, Jr., of Cook County Legal Assistance Foundation, both of Chicago, for appellee.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

On October 20, 1976, the Director of the Illinois Department of Labor (hereinafter Director) assessed Harvey Pre-School for Exceptional Children (sometimes hereinafter School) $9,862 for taxes due under the Illinois Unemployment Insurance Act (Ill. Rev. Stat. 1975, ch. 48, par. 300 *et seq.*) (hereinafter Act). The School filed a protest and after an administrative hearing before the Department of Labor (hereinafter Department), it was found that the assessment was proper. A complaint for administrative review was thereafter filed, and the circuit court reversed the Department's ruling. The Director appeals. The issues presented for review are whether the burden of proving the exemption under the Act was improperly placed upon the School and whether the Director's finding that Harvey was not a school under the Act was against the manifest weight of the evidence. We affirm.

The hearing upon the School's protest developed the evidence which constituted the record on review before the circuit court. The hearing was conducted by a "representative" appointed by the Director. At the commencement of the hearing, the representative announced that the "* * * issue is basically whether the petitioner is a not-for-profit school, not an institution for higher learning as defined in section 211.3[C] of the Illinois Unemployment Insurance Act." That section provides that the term "employment" under the Act triggering tax liability "* * * shall not include services performed * * * in the employ of a school which is not an institution of higher education." (Ill. Rev. Stat. 1975, ch. 48, par. 321.3.) Ten exhibits were offered by the representative of the Department and received in evidence. Exhibit No. 8 revealed that the School was incorporated in 1970 as a not-for-profit corporation with the stated purpose of providing preschool training and education for educable mentally handicapped children in the area of Harvey, Illinois. The School is registered with the Illinois Attorney General's office as a charitable organization, with a similarly stated purpose. According to a "determination letter" from the United States Department of the Treasury, District Director of Internal Revenue Service, the School was exempted from paying Federal taxes under section 501(c)(3) of the Internal Revenue Code; social security taxes under the Federal Insurance Contributions Act; as well as taxes imposed under the Federal Unemployment Tax Act. Pursuant to the Illinois Child Care Act (Ill. Rev. Stat. 1975, ch. 23, par. 2211 *et seq.*), the School is licensed as a child-care facility for providing care as a day-care center with a capacity for 38 children by the Department of Children and Family Services and it is registered with the Illinois Office of Education as a nonprofit facility serving handicapped children pursuant to section 14—7.02 of the School Code. Ill. Rev. Stat. 1975, ch. 122, par. 14—7.02.

The School, consisting of a nursery and three classrooms, is located in a church in Harvey. Mrs. Cora Morton, executive director of the School, testified for the School that it employs a total staff of 23 persons, including five teachers, five teacher's aides, a speech and language assistant, a physical motor assistant, a speech therapist, a social worker, a nurse, a cook, a custodian and a bus attendant. There is a teacher and a teacher's aide for every 10 children. The School is in session for 182 days per year, and the children attend school five hours per day and receive lunch pursuant to the School lunch program.

According to Mrs. Morton, children are placed with the School because of lack of public school classroom space, programs and teachers and also because the School is better equipped to handle their special needs. The children receive the same education they would receive in public school; there is no difference in program. The School's population

includes children who suffer from Down's syndrome, cerebral palsy, microcephaly, hydrocephaly, spina bifida and autism. The children range in age from infants to 10 years, 20 of whom are three years and younger and the balance older than three years. Ten of those children three years and younger are not brought to the School but are visited by teachers at home for what is called an "infant stimulation program." This entails motor development and speech and involves analysis of development levels and explanations to parents on how to help in the development of the handicapped child. Four staff persons are involved in this home-visiting group: one teacher, one teacher's aide, one physical therapist and one speech therapist. Students are referred to the School by local public schools and by a social worker employee of the School. If a child has developed far enough so he can be placed in a public school, he will be transferred there and each year about 50 percent of the students are transferred to public school special education classes. If a public school authorizes a child to be placed with the School the State reimburses $2,500 of the $3,785 tuition. In 1975-76, tuition for 14 children was paid in part by the State pursuant to section 14—7.02 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 14—7.02), when the School's total enrollment was approximately 50 children. Nothing was received from the State for children less than age three under the School Code, but it had received a grant from the Department of Mental Health for this use.

Mrs. Joanna Bosko, called by the School, the curriculum coordinator, testified that about 25 percent of the three-year-olds are capable of learning addition and subtraction, and receive instruction in that area. Attempts are made to teach all the children speech and language and whatever necessarily precedes oral communication. Each child has a specially designed program because of their many differing needs. Many of the children are taught reading or "prereading skills" that encompass comprehension, discrimination, association, and classification if the child is unable to learn reading in the traditional sense. They receive special education which parallels special education in the public schools. There is also motor therapy, where necessary, to prepare a physically handi-capped child to do things like pick up a book.

Darryl Bunkley, a field representative employed by the Director, the only witness presented by the Director, testified that he had determined the amount owed by the School after viewing its books, but made no determination that the School was liable under the Act, having performed only the necessary calculations.

The Director's representative rendered an opinion holding that the institution was not a "school" for purposes of the Act, and found that the assessment was therefore properly made. Although the evidence showed that the School was included within the definition of "non profit

organization," it had not carried its burden of proving that it was entitled to an exemption because the supreme court's two-part test defining "school" had not been met: (1) a course of study which fits into the general scheme of education, and (2) a course of study which substantially lessens what would otherwise be a State function. Applying this two-part test, the Director found that the skills taught do not constitute schooling under the case law because the School's program is nearly devoid of the " 'useful branches' of learning such as English, spelling, [and] history * * *."

At the hearing on administrative review, the School asserted that the administrative hearing evidence established its status as a "school" as defined by case law, and that it is therefore exempt. The trial court observed that the Director did not present any evidence at the administrative hearing and, citing *Farney v. Anderson* (1978), 56 Ill. App. 3d 677, 372 N.E.2d 151, reversed the Director on the ground that he failed to show that Harvey Pre-School was not a "school," the order stating that "the findings * * * were not based upon facts established in the evidence and the decision was arbitrary and an abuse of * * * discretion."

■■ The Director contends on appeal, as it did at the trial court, that once a taxpayer is found to be within the inclusion section of a tax statute, the burden then shifts to the taxpayer to prove that it meets an exemption section of the Act. The School asserts that the Director's finding was based on facts not in the record, and he did not carry the burden of presenting evidence that appellee was not a school. We believe that the Director correctly relies upon *American Medical Association v. Department of Labor* (1946), 392 Ill. 614, 65 N.E.2d 350, for the proposition that under the Unemployment Compensation Act, the burden of proof must be borne by the taxpayer to demonstrate that it has fulfilled the exemption requirements. See also *Copilevitz v. Department of Revenue* (1968), 41 Ill. 2d 154, 242 N.E.2d 205, and *Rentra Liquor Dealers, Inc. v. Department of Revenue* (1973), 9 Ill. App. 3d 1063, 293 N.E.2d 388, which held that corrected assessments by the Department of Revenue under the Retailers' Occupation Tax and Municipal Retailers' Occupational Tax establish a prima facie case and the burden then shifts to the taxpayer to prove that it meets the exemption. In *Telco Leasing, Inc. v. Allphin* (1976), 63 Ill. 2d 305, 310, 347 N.E.2d 729, not cited by either party, a taxpayer claimed an exemption under the use tax. The supreme court stated, as "rules of construction which govern taxation cases * * * [i]t is well established that a statute which exempts property from taxation should be strictly construed in favor of taxation and that a party claiming an exemption has the burden to prove clearly and conclusively that he is entitled to the exemption."

The trial court relied solely on *Farney v. Anderson* (1978), 56 Ill. App. 3d 677, 372 N.E.2d 151, in coming to its conclusion, and the School asserts

here that *Farney* is controlling. In *Farney*, a hearing was conducted by the Illinois State Medical Disciplinary Board, which recommended that Dr. Farney's license to practice medicine be suspended for unethically prescribing drugs. Farney appealed to the circuit court, which reversed the administrative ruling. No expert testimony was introduced by the Department of Education and Registration concerning whether the method employed by Dr. Farney might be the accepted one for treating addicts. The appellate court held that under the circumstances, the burden was on the Department to show the doctor had engaged in unethical conduct, which it failed to meet. This situation is inapposite to the tax exemption issue at bar, which is clearly governed by the rules of construction set forth in *Telco Leasing, Inc.*, and the preceding cited cases.

The School next contends that, even if the trial court's reasoning was incorrect, its ruling should be affirmed because the Director's decision in any event was against the manifest weight of the evidence. We agree. Section 211.3 of the Act does not include a definition of "school."[1] The parties agree that the determination of whether an institution is a school for tax exemption purposes is based upon a two-part test announced in *Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 146 N.E.2d 42, and *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 146 N.E.2d 73. In *Ray Schools* the court held that the burden is on the taxpayer claiming to be a school to show that there is a "* * * *substantial benefit to the public* which justifies the granting of an exemption, and the course of instruction and methods must be such as to bring the institutions within the *ordinary and accepted meaning of a school* or educational institution." (Emphasis added.) (12 Ill. 2d 376, 383.) In *Coyne*, a companion case, the standard was articulated as follows: "first, a course of study which fits into the *general scheme of education* founded by the State and supported by public taxation; second, a course of study which *substantially lessens* what would otherwise be a *governmental function* and obligation." (Emphasis added.) 12 Ill. 2d 387, 392-93.

The Director maintains that the first part of the standard was not met because the infants under three years old are only taught cognitive and motor skills and the children older than three are taught these same skills with only a small amount of traditional academic subjects, such as English, spelling, history, reading and mathematics. He concludes, therefore, that the School's program does not fit into the "general scheme of education." The School counters that the education given to the

---

[1] The Director correctly notes that the Legislature amended the Unemployment Compensation Act to eliminate the exemption for a "school which is not an institution of higher education," effective November 1977. (Ill. Rev. Stat. 1979, ch. 48, par. 321.3.) Thus, thereafter, schools are not exempt from taxation under this act. Both parties agree that this case is governed by the statute prior to its amendment.

children three years and older, constituting 60 percent of the total number of children, is clearly within the general scheme of education because in 1965 the Legislature, in article 14 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 14—1.01 *et seq.*) provided for public education of handicapped children aged three through 21 who suffer from physical handicaps (par. 14—1.02), maladjustments (par. 14—1.03), specific learning disabilities (par. 14—1.03a), educable mental retardation (par. 14—1.04), trainable mental handicaps (par. 14—1.05), and speech defects (par. 14—1.06). In our opinion, this argument is meritorious. As to the children younger than three, which constitute 40 percent of total school population, although acknowledging that the statute does not provide public education for them, the School asserts that it is not necessary for a program to exactly mirror a program offered in a public school to qualify as a school, citing *Illinois College of Optometry v. Lorenz* (1961), 21 Ill. 2d 219, 171 N.E.2d 620. In *Lorenz*, the supreme court held that although the State of Illinois offered no public education for optometry, the institution nevertheless constituted a school of higher education for tax exemption from general taxes. We believe the School correctly concludes that simply because the State does not provide mandatory education for children under three, the finding that Harvey Pre-School is a school for tax exemption purposes is not precluded.

With respect to the test of whether it "renders a substantial benefit to the public," the School asserts that the children above three years of age are entitled by statute to education; therefore, the education it gives them clearly lessens the State's burden to teach them. The School receives reimbursement for 14 of these 30 children; however, the tuition is $3,785 whereas the reimbursement is only $2,500, which it asserts, is also a benefit to the State. And, although the State is not obligated by statute to educate children below three years, according to the School, the State will benefit by early education because the sooner special education begins, the less attention the children will need later. If the children need less special education later, when age three, and the State's obligation begins, then the State will save a significant amount of money in mandatory special education expenses. Finally, the School contends, if certain deficiencies are caught soon enough, the child may need no special education later. The State responds that such benefits are speculative and that the argument is "analogous to a claim by a trade or vocational school that it also lessens the burden on taxpayers by training persons in a skill whereby they can obtain gainful employment when without such training they might not find employment and would receive public welfare." Article 14 of the School Code supports the School's contentions in this regard, however.

The record shows that at least 60 percent of the children receive an education similar to special education afforded in the public schools, and the State is relieved to the extent of the obligation to pay for this education. We cannot say that as to these children the benefit is less than substantial. Therefore, both parts of the test appear met for that percentage of the children. Even if the 40 percent of the remaining children, namely those below three years old, are receiving an education not within the scope of a "school," the program viewed as a whole does "fit into the general scheme" of education within the State, and the School's operation does "substantially lessen" what would otherwise be a governmental function.

■■ From the foregoing, we are of the opinion that the Director's decision was against the manifest weight of the evidence which clearly demonstrated that Harvey Pre-School for Exceptional Children is a "school" for Illinois Unemployment Insurance tax exemption purposes. For these reasons we affirm the judgment of the trial court.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.