# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Heabler v. Illinois Department of Financial & Professional Regulation,**
**2013 IL App (1st) 111968**

---

| | |
|---|---|
| Appellate Court Caption | FRANK HEABLER, JR., Plaintiff-Appellant, v. THE ILLINOIS DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; Daniel E. Bluthardt, Director of the Division of Professional Regulation, of the Illinois Department of Financial and Professional Regulation, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-11-1968 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | February 14, 2013<br><br>March 13, 2013<br>March 28, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Department of Financial and Professional Regulation's administrative decision that plaintiff, a private detective, violated the Private Detective, Private Alarm, Private Security, Fingerprint Vendor and Locksmith Act by engaging in unethical, unprofessional or dishonorable conduct in the course of a stop for a traffic violation was upheld on appeal, even assuming it was not unprofessional to have six loaded weapons in his vehicle, since the testimony that he directed obscenities at the officers involved and failed to immediately disclose his occupation and the weapons supported the finding that a violation occurred. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-49137; the Hon. Richard J. Billik, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Edward W. Williams, Fred Nickl, and Claire C. Kossmann, all of Edward W. Williams, Ltd., of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Valerie Quinn, Assistant Attorney General, of counsel), for appellees.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Fitzgerald Smith and Epstein concurred in the judgment and opinion.

## OPINION

¶ 1    Plaintiff Frank Heabler, Jr., appeals from the trial court's judgment affirming the administrative decision of the Illinois Department of Financial and Professional Regulation (Department), which found that he violated the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (the Act) (225 ILCS 447/5-3 *et seq.* (West 2008)) by engaging in unethical, unprofessional or dishonorable conduct and imposed a reprimand against his private detective license. On appeal, Heabler asserts that the Department's decision was not supported by expert testimony because the Department's expert testified only as to his personal opinion, rather than objective professional standards. Heabler also argues that the reprimand violated his first amendment rights because he was sanctioned for protected speech. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    It is undisputed that in 2008, Heabler held a private detective license, private security contractor license, permanent employee registration card and firearm control card. On November 4, 2008, Heabler was driving when he had an encounter with Detective Ronald Muich and Lieutenant Paul Messina of the Village of Rosemont police department that led to the reprimand of Heabler's private detective license. The Department filed a complaint alleging, in pertinent part, that during a traffic stop, Heabler yelled obscenities and argued with the officers. The complaint also alleged that Heabler provided inaccurate information regarding the weaponry in his car and had a YouTube video regarding rioting by Obama supporters that was actively running on his laptop computer that was located on the front passenger seat. In addition, the complaint alleged that Heabler later told police he had six weapons in case there was trouble on election night, referring obliquely to the aforementioned video. The complaint alleged that his explosive behavior, excessive use of unsecured weapons, misrepresentation to the police regarding the quantity of weapons he had

-2-

and his proffered reason for having those weapons constituted unethical, unprofessional and dishonorable conduct warranting discipline (225 ILCS 447/40-10(a)(3) (West 2008)).

¶ 4     At a hearing before Administrative Law Judge (ALJ) John M. Lagattuta, Heabler testified that he had contracted to provide American Taxi with security services. At about 1 p.m. on the day in question, he left a cab lot and drove north on Mannheim Road to meet a client. At that time, he had six loaded weapons in his car, including a Beretta, a Magnum Smith & Wesson, a rifle, a revolver and a stun gun. Heabler would have secured his weapons when he reached his destination but the weapons were in his control. In addition, his weapons were neither locked nor required to be. He carried a rifle because he occasionally carried large sums of money for American Taxi. When asked why he was carrying six guns, he blithely testified, "Just [a] routine day at work, ma'am." In addition, Heabler testified that his laptop computer was closed and denied that a video was on his laptop regarding potential rioting in the event of Obama's election. He explained that a radio program had been discussing a YouTube video regarding a police officer pushing a person at a rally for Obama and an ensuing riot, so he had searched for the video on his laptop but he closed the laptop before leaving the cab lot.

¶ 5     On the way to his meeting, Heabler stopped to check on two American Taxi vehicles that were parked on a service road. Heabler admitted backing out of the service road but denied almost hitting the Rosemont officers' car. Instead, he merely pulled onto the shoulder of the road to allow the unmarked car to pass. The two officers used their air horn and flashed their lights, and the officer in the passenger seat, Lieutenant Messina, swore at Heabler. Heabler testified that at that time, he did not know that the men were officers. Following the initial encounter, Heabler stopped at a traffic light and looked in the general direction of the unmarked car. Heabler said nothing at that time, but the officers in the car rolled down a window and swore at him. He testified that one of the officers actually asked if Heabler was "eyefucking" him. When Heabler asked what the officer's problem was, both officers yelled at him. The officers pulled Heabler over, continued to swear at him and asked whether he wanted a ticket. When asked whether he had a gun, Heabler volunteered all information regarding the weapons within his possession. Although Heabler was not initially given the chance to say anything, at the first opportunity, he identified himself as a private detective to Detective Muich. Heabler was ultimately handcuffed and placed in a squad car. At the police station, Heabler did not say that he was carrying weapons to be ready for any trouble on election night.

¶ 6     On cross-examination, Heabler testified that he conducted many activities from his car and stored his equipment there because he could receive call-outs as a private detective or private security contractor at any time. At the stop light, Heabler saw that the officers were in Rosemont uniforms. The officers yelled at him about backing out on to Mannheim Road. Heabler asked what he was suppose to have done but was not yelling or being argumentative. When the officers continued to berate Heabler, he responded, "[i]f you were so concerned, why didn't you stop and let me out?" After Detective Muich took Heabler's license to the police car, he asked Heabler whether he had been arrested for unlawful use of a weapon (UUW) in 1987. Heabler answered yes and said he was a private detective. The officers patted him down and searched his car. He was released from jail at about 3:30 p.m. the next

day with only a citation for improper backing.

¶ 7  Detective Muich testified that on the day in question, he was driving his unmarked car while Lieutenant Messina sat in the passenger seat. Lieutenant Messina was in uniform but Detective Muich was not. When Detective Muich saw a car backing into his lane from a service road, he swerved and used his air horn. Heabler pulled to the left of the police car, waved his arms and appeared to be irate. After they rolled their respective windows down and Detective Muich identified himself as an officer, Heabler yelled a string of obscenities and Detective Muich pulled Heabler's car over. Detective Muich told Heabler that he almost hit their police car and observed that an open laptop in Heabler's car displayed a YouTube video regarding candidate Barack Obama.

¶ 8  Detective Muich then learned through dispatch that Heabler had a prior UUW charge. Upon inquiry, Heabler stated that he had a gun next to him. Accordingly, Detective Muich had Heabler exit the car and put him in handcuffs. At some point before being placed in the police car, Heabler said he was a private detective. When Detective Muich asked Heabler if he had more guns in the car, Heabler said he did not. Detective Muich later acknowledged on cross-examination, however, that he had testified in traffic court that Heabler "kept telling us he had more guns in the car." The officers recovered several more weapons as well as an expired private detective license card. Because it was election day, the officers were unable to verify the status of Heabler's license with the Department. He was held in custody for 22 hours as a result. When Detective Muich asked Heabler at the police station why he had those weapons, Heabler said that he was authorized to carry them as a private detective. When asked whether carrying six weapons was excessive, Heabler said that he wanted to be prepared in case there was trouble on election night. Heabler also said that the video was displayed on his laptop because he had heard on the radio that there had been rioting and wanted to look into it.

¶ 9  Lieutenant Messina testified that he was in uniform and sitting in the passenger seat of Detective Muich's car when another car backed out of a construction driveway. Detective Muich took evasive action to avoid a collision and the officers subsequently saw the other driver, Heabler, gesturing and yelling through the window while at the stop light. Detective Muich identified himself as a police officer when talking to Heabler through the window and did so a second time after pulling him over. Heabler was boisterous and asked why the officers used their air horn. On cross-examination, Lieutenant Messina testified that at some point during the encounter, Heabler told Detective Muich that he should have stopped traffic for Heabler to back up. Lieutenant Messina also testified that Detective Muich was in plain clothes with his side arm and a badge visible.

¶ 10  Harry Brown, who the parties stipulated was an expert private detective, testified that he was familiar with industry standards regarding a private detective's conduct in a traffic stop. When one of his investigators is confronted by law enforcement, the investigator, for the safety of the officers and himself, is to immediately identify himself as a private detective and notify the officer if the investigator is carrying a firearm. This was their duty according to industry standards and the failure to do so would be unethical and unprofessional. Specifically, a private detective's failure to take those measures presents a risk of harm to the officer and the public because someone may make a wrong decision if a firearm is exposed

and the officer is unaware of the private detective's identity. In addition, according to industry standards, if an armed private detective were to lie to the police about the weapons he had, it would be unprofessional and create a risk of harm to the officer and the public because a weapon in an unsecured position may discharge during a search. Brown also opined that Heabler's conduct in having six loaded weapons in the car presented a risk of harm to the officers, and possibly the public, and was inappropriate under industry standards because the guns would be too hard to control. Brown further testified that carrying six guns out of fear that there would be rioting does not constitute performance of duties as a private detective. It would also be unprofessional and unethical for Heabler to yell obscenities, display out-of-control behavior and argue with Detective Muich but it would not be unprofessional conduct for weapons being transported in a car not to be in the detective's immediate control, secured or broken down.

¶ 11 Following Brown's testimony on direct examination, his testimony during cross-examination, redirect and re-cross-examination, oscillated between stating that his testimony was his opinion based on industry standards and that his testimony was merely personal opinion because there are no industry standards. Similarly, he testified both that Heabler was and was not acting as a private detective, as opposed to a private security contractor, at the time of the offense. Brown also testified that no private detective training exists, Brown's best practices and personal standards had been accumulated from what he had observed and personally been trained to do and that the only standards that regulate the private detective industry are found in the Act or the rules that accompany the Act. Brown added that his personal opinions were based on, among other things, "industry standards" and that none of his opinion applied if Heabler was acting as a security contractor during the incident.

¶ 12 Heabler presented the testimony of Glen Crick, who the parties stipulated was an expert private detective. The ALJ also found Crick was qualified to provide expert testimony as a lawyer. Crick testified that no formal education was required to become a private detective, no organization imposed standards of professional conduct and that the Act itself provided no guidance on how many weapons a detective could possess. He opined that if a detective is not violating criminal law, there was no ethical violation. On cross-examination, he testified that the profession of private detectives was "inherently not real ethical" and that it was not unprofessional for a private detective to lie. Whether a detective's failure to cooperate with police was unprofessional depended on the circumstances.

¶ 13 Heabler also presented the testimony of Joel Ostrander, whom the ALJ qualified as an expert private detective and firearm instructor. Ostrander testified that there were no professional standards applicable to the private detective industry, no educational requirements and no ethics regulations promulgated by the Department. Accordingly, a private detective was under no obligations other than those that apply to a private citizen. It would not be unethical for a private detective to inaccurately respond to an officer's question as to whether any other weapons were in the car or display out of control behavior toward an officer during a traffic stop. In addition, nothing in the Act or rules constrains the number of weapons a private detective may carry. As a result, carrying six weapons did not violate any standard. Ostrander further testified that if five guns are in reach, they are under control and secure because the detective has immediate possession of them and there is no threat to

the public. Although private citizens with a firearm owners identification card must have their firearms broken down, not immediately accessible or unloaded and closed in a case, private detectives are not subject to that requirement. On cross-examination, Ostrander testified that in traffic stops, he does not inform the police that he is armed and that if an officer asked whether Ostrander had firearms, he would respond, "I don't care to talk about it."

¶ 14 The ALJ found, in pertinent part, that the Department proved by clear and convincing evidence that Heabler violated the Act with respect to his private detective license by engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public (225 ILCS 447/40-10(a)(3) (West 2008)). The ALJ found Brown to be credible, in contrast to Crick and Ostrander. The ALJ rejected Heabler's suggestion that he was acting as a private security contractor, rather than a private detective, at the time of the incident because (1) Heabler testified that he received call-outs from clients at any time and, thus, needed to carry his guns in his car; and (2) Heabler identified himself as a private detective to Detective Muich. The ALJ also rejected Heabler's argument that the Department cannot discipline him for unprofessional behavior where the Department has not promulgated rules defining that term because the term provided fair noticed to licensed professionals and it was impossible to catalogue every possible instance of violative conduct. In addition, the ALJ found that Heabler, after a near collision with a police vehicle, yelled obscenities at police officers and failed at the traffic stop to immediately inform them that he was a private detective and was armed with six weapons. The ALJ found that this conduct in initiating an altercation with officers in the middle of the afternoon on a busy road posed potential harm to the police officers and the general public. The ALJ recommended that his private detective license be reprimanded and that he be ordered to pay a $5,000 fine.

¶ 15 The Private Detective, Private Alarm, Private Security, Fingerprint Vendor and Locksmith Board (the Board) of the Division of Professional Regulation of the Department (Division) adopted the ALJ's factual findings but rejected his conclusion that the Department had shown a violation. The Board recommended that no disciplinary action be taken. The Division's Director subsequently found the evidence was sufficient, rejected the Board's recommendation and reprimanded Heabler's private detective license. The trial court then denied his complaint for administrative review.

¶ 16                                    II. ANALYSIS

¶ 17 On appeal, Heabler asserts that the Director's decision was not supported by the evidence because the Department's only expert witness, Brown, testified to his personal opinion regarding Heabler's conduct rather than providing an opinion based on industry standards. We disagree. In administrative cases, we review the agency's decision. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). Factual rulings will be reversed only if against the manifest weight of the evidence. *Id.* The Director, as trier of fact, evaluates all evidence, judges the witnesses' credibility, resolves conflicts and draws inferences from the facts. *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 561 (2004). Nonetheless, in the absence of expert testimony, an agency's decision lacks sufficient

evidence. *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 699 (1994). Thus, an agency may use its expertise to evaluate conflicting testimony presented by experts but the agency cannot substitute its special knowledge for expert testimony. *Chase v. Department of Professional Regulation*, 242 Ill. App. 3d 279, 288 (1993). Furthermore, a mixed question of law and fact will be reversed only if clearly erroneous. *Wade*, 226 Ill. 2d at 505. Accordingly, we review the Department's underlying factual findings under the manifest weight of the evidence standard and review the mixed question of whether Heabler's conduct violated the Act under the clearly erroneous standard. See *Walk v. Department of Children & Family Services*, 399 Ill. App. 3d 1174, 1187 (2010).

¶ 18        As a threshold matter, we reject Heabler's suggestion that the evidence was insufficient to support the Director's decision because he was acting only as a private citizen at the time of the encounter. Both Heabler and Detective Muich testified that Heabler identified himself as a private detective during their encounter. In addition, Heabler testified that he stored weapons in his car to be prepared for call-outs as a private detective. See 225 ILCS 447/35-35(b) (West 2008) ("This Act permits [private detectives] to carry firearms while actually engaged in the performance of their duties or while commuting directly to or from their places of employment ***."). It was reasonable for the Director to rely on Heabler's own representations.

¶ 19        We also find the evidence was sufficient to support the Director's finding that a violation occurred. Here, the Department presented the testimony of Brown, stipulated by Heabler to be an expert in the private detective industry. Although his testimony could have been more articulate and clearer, the Director was not required to find that Brown's testimony was based solely on personal opinion. *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633, 658 (2009) ("[t]he Director may accept or reject as much or as little of a witness's testimony as he pleases"). Brown appeared to struggle with concept of "industry standards" but the record suggests that he understood this term to refer only to written industry standards. Heabler has cited no law supporting the suggestion that all industry standards must be memorialized in writing. When read as a whole, however, Brown's testimony indicates that his opinion was based on the custom and practice in the industry, regardless of whether certain deviations in practice may exist among some private detectives. Moreover, section 40-10(a)(3) of the Act itself sets forth a broad standard for the industry, that private detectives not engage in "dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public." 225 ILCS 447/40-10(a)(3) (West 2008). Although the legislature has not defined the terms "dishonorable," "unethical" and "unprofessional" with more specificity, it was not required to. *Homeward Bound Services, Inc. v. Department of Insurance*, 365 Ill. App. 3d 267, 273 (2006) (the legislature is not required to define every term within a statute). Similarly, not all policies of an agency must be announced in published rules (*id.*) and administrative agencies may establish standards of conduct through adjudication (*Maun v. Department of Professional Regulation*, 299 Ill. App. 3d 388, 401 (1998)).

¶ 20        Heabler also contends that his allegedly violative conduct in yelling obscenities at police officers and failing to immediately inform them that he was an armed detective cannot possibly be encompassed in the terms "dishonorable," "unethical," or "unprofessional"

conduct because they in no way reflect on his ability to practice his profession as a private detective. As a private detective, Heabler will undoubtedly encounter law enforcement officials while driving in the course of his employment and while other drivers are present on the road. In addition, Heabler uses his car and firearms as tools of his trade. See 720 ILCS 5/24-2(a)(5) (West 2008) (providing that licensed private detectives are exempt from the UUW statute). It is clearly relevant to his ability to perform his duties as a private detective that while possessing these tools, he does nothing to escalate matters with police officers by causing them to experience distrust and make potentially deadly split-second decisions upon seeing an unexplained weapon or accidentally discharge a loaded weapon. As Brown testified, this possibility poses a risk to the officer and the public. Even assuming that it was not unprofessional for Heabler to possess six loaded weapons in this instance, his other conduct, directing obscenities at the officers and failing to immediately disclose his occupation and weapons, supports the Department's finding that a violation occurred.

¶ 21   Thus, considering Brown's testimony as a whole, as well as section 40-10(a)(3), the Department reasonably could have found that Brown provided expert testimony based on industry standards that Heabler engaged in dishonorable, unprofessional or unethical conduct. *Cf. Obasi*, 266 Ill. App. 3d at 700-01 (the Department's expert opined that doctor did not abandon his patient). This is not an instance where the Department presented no expert testimony. *Cf. Farney v. Anderson*, 56 Ill. App. 3d 677, 680-81 (1978); see also *Anderson*, 348 Ill. App. 3d at 561. In addition, Heabler had ample opportunity to cross-examine Brown's expert testimony and we are sufficiently able to comprehend his testimony on appeal. Accordingly, the purposes of requiring expert testimony have been satisfied. See *Farney*, 56 Ill. App. 3d at 681-82. We further note that Brown's testimony regarding Heabler's conduct in this case is not highly technical in nature, requiring less assistance for the reviewing court to understand the matter. See *Chase*, 242 Ill. App. 3d at 285 ("where an administrative agency makes factual determinations involving technical concepts unique to its expertise, expert testimony must be introduced into the record supporting the agency's position" (emphasis omitted)).

¶ 22   Finally, Heabler asserts that the Department's reprimand violated his first amendment rights by sanctioning protected free speech. A party may forfeit his right to challenge the constitutionality of a statute, however, by failing to raise it before the administrative agency, even though the agency lacks the authority to invalidate a statute. *Weipert v. Department of Professional Regulation*, 337 Ill. App. 3d 282, 286 (2003).

¶ 23   Here, Heabler has forfeited this constitutional challenge by failing to raise it before the Department. Although he urges us to overlook this deficiency, we decline to do so, particularly where, as here, Heabler has cited only to criminal case law in support of his position. *City of Houston v. Hill*, 482 U.S. 451 (1987); *Lewis v. City of New Orleans*, 415 U.S. 130 (1974).

¶ 24   For the foregoing reasons, we affirm the Department's judgment.

¶ 25   Affirmed.