In the Matter of the Appeal of Dr. Dwight SCHRAMM From the Final Order of the State Board of Dentistry Dated May 6, 1986.

No. 15588.

Supreme Court of South Dakota.

Considered on Briefs Sept. 3, 1987.

Decided Oct. 14, 1987.

would have covered his entire family after June 30, 1985. Ewalt chose not to do so.

William F. Day of Day & Grossenburg, Winner, for appellant Dr. Dwight Schramm.

Roger Tellinghuisen, Atty. Gen., and John W. Bastian, Asst. Atty. Gen., Pierre, for appellee State Bd. of Dentistry.

GILBERTSON, Circuit Judge.

### ISSUE PRESENTED

■ Pursuant to SDCL Ch. 36–8, the South Dakota State Board of Dentistry suspended the license of appellant to practice dentistry in South Dakota for an indefinite period upon a finding of "unacceptable patient care due to his deliberate or negligent act or acts or failure to act." Appellant seeks reversal on the grounds that at his hearing, the Board of Dentistry had no expert testimony before it as to the appropriate standard of care required of dentists in areas similar to appellants and that he intentionally or negligently violated that standard. The Board argues that it has the expertise to make these findings, and therefore, expert testimony is unnecessary. We agree with appellant that such expert testimony is required in this case and reverse and remand.

### FACTS AND PROCEDURE

Appellant is a dentist licensed to practice in the State of South Dakota by the South Dakota State Board of Dentistry (hereinafter Board). He conducts his practice in Winner, Tripp County, South Dakota. In 1985 and 1986, the Board received complaints from other dentists in the Winner area that they were seeing patients who had previously been to appellant for treat-

ment and that this treatment was inadequate. Thereafter, the Board had these complaints investigated by one of its members who himself is a dentist.[1] Based on his investigation, the Board ordered a hearing for April 5, 1986 to determine whether appellant should face disciplinary action for a violation of SDCL 36–6–44(3) for deliberate or negligent act or acts or failure to act.

The hearing was held after proper notice was given to appellant pursuant to SDCL Ch. 1–26. Both the Board and appellant were represented by counsel. Dr. Donald E. Nemer, Gregory, South Dakota, Dr. Charles M. Corkel, Winner, South Dakota, and Dr. Gregory R. Hermsen, Winner, South Dakota, were subpoenaed by the Board to testify and did so. Their testimony dealt with patients they had seen who had previously been treated by appellant. Thereafter, Dr. Robin Grossenburg of Yankton, South Dakota, Dr. D.C. Dendinger of Yankton, South Dakota, and Dr. V.E. Soll from Winner, South Dakota, appeared on behalf of appellant. It is undisputed that there is no expert testimony in the record as to the standard of care or expertise of dentists in the Winner area or similar towns or that the appellant negligently or intentionally violated any specific standards.

On May 6, 1986 the Board issued findings of fact, conclusions of law and its order. The Board made separate findings as to 15 patients and in 13 cases found a pattern of unacceptable patient care which included "failure to properly diagnose and plan treatment appropriate to the existing conditions and ineptness in ordinary dental skills of prosthetics, root canal surgery, operative dentistry and recognition of decay." The Board ordered that appellant's license be suspended indefinitely.[2]

Appellant sought judicial review of the Board's decision in the circuit court of Tripp County. The circuit court affirmed the Board's decision finding that expert testimony was not necessary in agency hearings conducted pursuant to SDCL Ch. 1–26 and that the Board's findings were not clearly erroneous. Thereafter, appellant brought his case to this court for further review.

## SCOPE OF REVIEW

The standard of review for administrative appeals (SDCL 1–26) which comes before this court has recently been clarified in *Permann v. S.D. Dept. of Labor,* 411 N.W.2d 113 (S.D.1987). Initially, we must determine whether the holding of the Board involves a finding of fact or conclusion of law. This distinction must be made to determine "the proper standard of review; that is, clearly erroneous as opposed to mistake of law." *Permann, supra,* 411 N.W.2d at 116, quoting *Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 296 (S.D.1982). Questions of law such as statutory interpretation of SDCL Ch. 1–26 are reviewed by this court de novo. No deference is given to the interpretation of the trial court, nor in this case, as most cases, to agency conclusions of law. The issue before us in this matter is clearly a question of law.

## STANDARD OF PROFESSIONAL COMPETENCE REQUIRED OF DENTISTS

■ Since the Board found appellant to have negligently performed patient care, a preliminary inquiry to review that decision is to determine the standard of care he supposedly violated.

SDCL 36–6–8.4 states as follows:

1. As this board member acted as an investigator who procured evidence and interviewed patients and other dentists, he felt it proper to excuse himself from sitting on the Board in this case and rendering a decision as a member of that Board.

2. The Board ordered that (1) the license of appellant be suspended immediately for an indefinite length of time; (2) prior to reinstatement, appellant retake the senior year of dental school in a program and at a school approved by the

Board; (3) upon successful completion of the senior year heretofore described, appellant shall pass an examination prescribed by the Board of Dentistry; (4) upon reinstatement, appellant shall be on probation for a period of three years and his practice shall be monitored during that time by appointees of the Board; and (5) prior to reinstatement, appellant shall pay all costs of the suspension proceedings and a fee for reinstatement.

The board of dentistry shall:

(1) Through its policies and activities, by rule establish standards for and promote the safe and qualified practice of dentistry....

(3) By rule, establish educational training and competency standards governing the examination and practice of practitioners under this chapter....

Despite this legislative authorization to set state-wide standards of competence for the practice of dentistry, the rules promulgated by the Board pursuant to this chapter fail to contain any such standard or standards. Neither party has cited us to any other statutory or administrative definitions concerning the minimum requirements of competence for the practice of dentistry.

Therefore, it would appear that the sole standard in existence is that which is used in tort actions. The same rule of law applies to all professions. *Lenius v. King*, 294 N.W.2d 912 (S.D.1980), *Magbuhat v. Kovarik*, 382 N.W.2d 43 (S.D.1986).

In performing professional services for a [patient], a [dentist] has the duty to have that degree of learning and skill ordinarily possessed by [dentists] of good standing engaged in the same type of practice in the same or a similar locality.

It is his further duty to see that care and skill ordinarily exercised in like cases by members in good standing of his profession engaged in the same line of practice in the same or similar locality under similar circumstances and to be diligent in an effort to accomplish the purpose for which he is employed. A failure to perform any such duty is negligence.

*Lenius* at 913. *See also* S.D. Pattern Jury Instruction 105.01. For the finder of fact, the issue then becomes whether the professional deviated from this required standard of care. *Magbuhat, supra.*

## ARE EXPERTS REQUIRED TO ESTABLISH THE STANDARD OF CARE AND WHETHER IT WAS VIOLATED?

In deciding this issue, the court is called upon to balance two sets of well established legal principles. It is beyond argument that the State of South Dakota has a legitimate interest for the protection of its citizens to regulate the practice of dentistry, including licensing and supervisory powers which naturally must include the power to discipline or exclude the unqualified. *Semler v. Oregon Bd. of Dental Examiners*, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086 (1935). "In addition to its general interest in protecting consumers and regulating commercial transactions, the state bears a special responsibility for maintaining standards among members of the licensed professions." *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 460, 98 S.Ct. 1912, 1920, 56 L.Ed.2d 444, 456 (1978).

The purpose of disciplinary proceedings and suspensions is not to punish the professional but is rather to "protect the public from further wrongdoing." *Matter of Voorhees*, 294 N.W.2d 646, 647 (S.D.1980).

On the other hand, it is also well established that one who has secured a license to practice dentistry has a property right in that license which cannot be taken from him without due process of law. *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959); *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Farney v. Anderson*, 56 Ill.App.3d 677, 14 Ill. Dec. 346, 372 N.E.2d 151 (1978); *Hake v. Ark. Med. Bd.*, 237 Ark. 506, 374 S.W.2d 173 (1964); *c.f. Lee v. South Dakota Department of Health*, 411 N.W.2d 108, (S.D. 1987).

The formality and procedural requisites of a hearing to address the issue of professional negligence and misconduct depends on the nature of the subsequent proceedings and the importance of the interests involved. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). In this matter, the agency hearing is the first and only time at which a de novo factual determination of the dentist's competence will be made. Further,

the seriousness of the outcome of the hearing on the dentist's right to continue to practice his profession is obvious:

> It has been repeatedly held in this state that the revocation of a license of a professional man carries with it dire consequences. It not only involves necessarily disgrace and humiliation, but it means the end of his professional career. In a proceeding so serious, due process of law requires a definite charge, adequate notice and a full, fair and impartial hearing.

*Smith v. Dept. of Registration,* 412 Ill. 332, 106 N.E.2d 722, 728 (1952).

A majority of the courts that have addressed this issue have required expert testimony to establish the standard of care to which the professional is held and whether that professional's conduct fell below that standard. *Farney, supra; Hake, supra; Medical Licensing Bd. of Indiana v. Ward,* 449 N.E.2d 1129, 1141 (Ind.App. 1983); *Dailey v. North Carolina St. Bd. of Dental Exam.,* 309 N.C. 710, 309 S.E.2d 219 (1983); *Franz v. Bd. of Med. Quality Assurance,* 31 Cal.3d 124, 181 Cal.Rptr. 732, 642 P.2d 792 (1982); *Arthurs v. Bd. of Registration,* 383 Mass. 299, 418 N.E.2d 1236 (1981); *Dotson v. Texas St. Bd. of Medical Exam.,* 612 S.W.2d 921 (Tex.1981); *McKay v. St. Bd. of Med. Exam.,* 103 Colo. 305, 86 P.2d 232 (1938); *Bd. of Dental Exam. v. Brown,* 448 A.2d 881 (Me.1982); *Gilbert v. State,* 119 Wis.2d 168, 349 N.W.2d 68 (1984); *Spray v. Bd. of Med. Exam.,* 50 Or.App. 311, 624 P.2d 125 (1981).

These jurisdictions have advanced several reasons for requiring expert testimony in administrative hearings. Some have held that the due process protections of the Constitution require that the professional in danger of losing his license has the right to confront, cross-examine and rebut the witnesses' testimony and evidence sought to be placed in the record to establish his incompetence. *Greene, supra; Farney, supra; Wood v. Tex. Bd. of Med. Exam.,* 615 S.W.2d 942 (Tex.Civ.App.1981).[3]

A second rationale which also applies to this case is that the boards in many states are not totally comprised of professionals. Many of them contain lay members who are not trained in that particular profession. It has been held that it is improper for the Board to rely on its own expertise in determining competency rather than expert testimony on the record as some of the members do not hold this type of expertise.[4] *Ward, supra.* In South Dakota, the Board of Dentistry is required by SDCL 36–6–1 to have two of its seven members be individuals who are not dentists.[5]

The rationale most often relied upon by these jurisdictions is that expert testimony is required to be placed in the record to allow proper judicial review by appellate courts. When the administrative body applies its own expertise outside the hearing record to set the standard of care and a

---

**3.** South Dakota has seen fit to adopt this requirement of due process in administrative proceedings by legislative action. SDCL 1–26–18 provides:

> Opportunity shall be afforded all parties to respond and present evidence on issues of fact and argument on issues of law or policy. A party to a contested case proceeding may appear in person or by counsel, or both may be present during the giving of *all* evidence, may have reasonable opportunity to inspect *all* documentary evidence, may examine and cross-examine witnesses, may present evidence in support of his interest, and may have subpoenas issued to compel attendance of witnesses and production of evidence in his behalf. (Emphasis added)

Further, this court has held that "due process of law applies to administrative and executive action by which one may be deprived of property as well and just the same as it does judicial action." *Application of Union Carbide,* 308 N.W.2d 753, 758 (S.D.1981).

**4.** The lack of expertise of the lay members of the Board arose at this hearing when a lay member of the board stated: "Dr. Corkle, I would like to ask you a question. As a lay person, I don't know all of the terminology that the rest of the Board are privy to know. Is it a normal thing that you leave carries on a tooth?"

**5.** The State of South Dakota has shown a strong commitment to the inclusion of lay members on boards and commissions supervised by state agencies. All 21 boards and commissions regulated by the Department of Commerce and Regulation pursuant to SDCL 1–35–8 have one or more lay delegates. *See also* the Judicial Qualifications Commission, SDCL 16–1A–2 and the Professional Practices and Standards Commission for Educators, SDCL 13–43–17.

determination whether a professional violated it, the appellate courts, who are lawyers by training, lack the expertise to review findings of a board concerning medical, dental or any multitude of professions and occupations.[6] *Ward, supra; Franz, supra; Dotson, supra; McKay, supra; Gilbert, supra.*

'This startling theory [that the Board could use its own expertise without the evidentiary basis of that expertise appearing in the record], if recognized, would not only render absolute a finding opposed to uncontradicted testimony but would render the right of appeal completely inefficacious as well. A board of experts, sitting in a quasi-judicial capacity, cannot be silent witnesses as well as judges.' The board may put its expertise to use in evaluating the complexities of technical evidence. However, the board may not use its expertise as a substitute for evidence in the record.

*Dailey, supra,* 309 S.E.2d at 227, citing *Arthurs, supra,* 418 N.E.2d at 1244.

There are a substantial minority of jurisdictions which have rejected this proposition and have allowed agency findings of negligence without expert testimony based solely on the expertise of the board members. *Jaffe v. Dept. of Health,* 135 Conn. 339, 64 A.2d 330 (1949); *Ferguson v. Hamrick,* 388 So.2d 981 (Ala.1980); *Kundrat v.*

*Commonwealth,* 67 Pa.Cmwlth. 341, 447 A.2d 355 (1982); *Davidson v. State,* 33 Wash.App. 783, 657 P.2d 810 (1983); *Arlen v. State,* 61 Ohio St.2d 168, 399 N.E.2d 1251 (1980); *Bd. of Chiropractic v. Clark,* 713 S.W.2d 621 (Mo.App.1986); *Appeal of Beyer,* 122 N.H. 934, 453 A.2d 834 (1982); *Sillery v. Bd. of Medicine,* 145 Mich.App. 681, 378 N.W.2d 570 (1985). These jurisdictions find that the boards are best qualified by training and expertise to make determinations of competence and therefore expert testimony is unnecessary. The problem with this rationale is that it does not offer any explanation as to how an appellate court is to review the record which is absent of any expert testimony on the standards of the particular professions involved or their violation.[7]

Therefore, this court adopts the rationale of the majority of jurisdictions and holds that where the issues of competence and negligence are of a complicated nature, expert testimony is required to establish the proper "competency standards" and whether or not they are met. To do otherwise would render this appellate court's review meaningless, as absent expert testimony, we cannot, by telepathy, act as mind readers determining from an empty record the factual determinations of the Board members. *Farney, supra.*[8] "Administra-

---

6. SDCL 1-35-8 sets forth the boards and commissions under the supervision of the Department of Commerce and Regulation which would have control over licensing procedures of that profession or occupation. While this court's holding in this case is clearly limited to standards for dentists, it is obvious that since a decision of these 21 boards and commissions may ultimately be reviewed by the courts pursuant to SDCL Ch. 1-26, the courts will be called upon in the future to determine whether licensing standards in these other occupations have been met or violated. The circuit courts and this court are hardly in a position to knowledgeably review disciplinary proceedings absent some sort of competency standard given the complex and diverse nature of these boards and commissions jurisdiction, to-wit: (1) abstract board of examiners, (2) board of accountancy, (3) engineering and architectural examiners, (4) barber examiners, (5) chiropractic examiners, (6) cosmetology commission, (7) board of dentistry, (8) electrical commission, (9) board of funeral service, (10) hearing aid dispensers, (11) medical and osteopathic examiners, (12) board of nursing, (13) board of pharmacy, (14) plumbing commission, (15) podiatry examiners, (16) optometry, (17) real estate commission, (18) nursing home administrators, (19) board of veterinary, (20) social work examiners, (21) examiners of psychologists.

7. The difficulty faced by appellate courts is aptly born out by this case. The record contains nearly one hundred dental charts of a technical nature, dozens of x-rays and physical exhibits which appear to be plaster casts of jaw bones and dentures. Without expert testimony, we, like the members of the jury, are left to speculation and conjecture as to their relevance and meaning. *Magbuhat, supra.*

8. Such a holding is also reinforced by the dictates of SDCL 1-26-25 which requires that an agency's findings of fact be written in a "concise and explicit statement of the underlying facts supporting the findings." *See Hutchinson County v. Fisher,* 393 N.W.2d 778, 783 (S.D.1986).

tive expertise would then be on its way to becoming 'a monster which rules with no practical limits on its discretion.' " *Arthurs, supra,* 418 N.E.2d at 1244, citing *Baltimore & Ohio R.R. v. Aberdeen & Rockfish R.R.,* 393 U.S. 87, 92, 89 S.Ct. 280, 283, 21 L.Ed.2d 219 (1968).[9]

 This holding has obvious well-recognized exceptions. There is the Board's power granted it by SDCL 1–26–19(3) concerning judicial notice.[10] The scope of this statute is limited by the legislature to "judicially cognizable or generally recognized technical or scientific facts." Further, it is obvious from the record that this statute did not come into play in this matter as a basis for the Board's finding of the appellant's lack of professional competence. There is no reference in the record to any facts being judicially noticed which would have then given appellant his right to refute the officially noticed matters. *Wood, supra.*

 A second exception to the above rule is where the acts of the professional are so obvious that expert testimony is unnecessary or where the outcome would not have occurred absent negligence, i.e. operating on the wrong knee or leaving surgical instruments in the body after surgery. *Van Zee v. Sioux Valley Hospital,* 315 N.W.2d 489 (S.D.1982); *Magbuhat, supra,* at 46; *Block v. McVay,* 80 S.D. 469, 126 N.W.2d 808 (1964). Also, no expert testimony would be necessary for the commission of acts which are blatantly illegal or improper, such as charging for work not done or overbilling at outrageous fees,

*Matter of Schultz,* 375 N.W.2d 509 (Minn. App.1985); forgery, *Voorhees, supra;* personal conversion of client trust funds, *Gottschalk v. S.D. State Real Estate Commission,* 264 N.W.2d 905 (S.D.1978); or sexual molestation of patients, *c.f. State v. Schnaidt,* 410 N.W.2d 539 (S.D.1987).

 Another exception would be where the person who holds the license stipulates or admits to an allegation. *Brown, supra; Arlen, supra.* However, any such admission must be explicit.[11] *Smith, supra.*

## CONCLUSION

It has been settled law in this jurisdiction for some time that for a plaintiff to recover even nominal damages in a malpractice case, expert testimony is needed absent the above exceptions. *Lenius, supra; Block, supra; Magbuhat, supra.* Logic and due process dictate that if this requirement is to be met for the recovery of a dollar in damages against a dentist, it should also apply where he faces the possibility of a permanent loss of his position and livelihood.

The decision of the Board of Dentistry and the circuit court is reversed and remanded.

All the Justices concur.

GILBERTSON, Circuit Judge, sitting for MILLER, J., disqualified.

---

9. The adoption of such a requirement should impose no great hardship on the Board nor interfere with its obligation to protect the public. At the hearing, the Board subpoenaed two dentists who practiced in the same town as appellant and another who practiced in a similar locale, all of whom have seen numerous examples of appellant's professional work. It would have been very simple to have asked these expert witnesses as to the standard of competency for dentists in the Winner area and similar locales and whether the examples of appellant's work they saw met that standard.

10. Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts

within the agency's specialized knowledge. Parties present at the hearing shall be informed of the matters to be noticed, and those matters shall be noted in the record, referred to therein, or appended thereto. Any such party shall be given a reasonable opportunity on request to refute the officially noticed matters by evidence or by written or oral presentation of authority, the manner of such refutation to be determined by the agency.

11. Appellant's statement at the end of the hearing; "Something like this gives me the idea there are some areas that I will need to improve my skills or may need a little improvement. I'll definitely concentrate on those areas," was not viewed by the Board as such an admission.