## In re: Donald R. Williams, M.D.
*[Cite as 3 AOA 288]*

*Case No. 89AP-777*
*Franklin County, (10th)*
*Decided May 15, 1990*

*Paxton & Seasongood, Mr. Earle Jay Maiman and Mr. Louis F. Solimine, for Appellee.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, Mr. Steven P. Dlott and Mr. John C. Dowling, for Appellant.*

BRYANT, J.

Defendant-appellant, State Medical Board of Ohio, appeals from a judgment of the Franklin County Common Pleas Court reversing appellant's order suspending plaintiff-appellee's medical license for a three-year probationary period. Appellant sets forth a single assignment of error:

"The court of common pleas erred by ruling that the board's order is not supported by reliable, probative and substantial evidence and is not in accordance with law."

By letter dated March 12, 1987, appellant notified appellee that his prescribing practices

allegedly violated several provisions of R.C. 4731.22(B):

"(1) that he had failed to use reasonable care discrimination in administering drugs, or had failed to employ acceptable scientific methods in the selection of drugs or other modalities for treatment of disease,

"(2) that he was selling, prescribing or giving away or administering drugs other than for legal or legitimate therapeutic purposes, and

"(3) that his prescribing practices were a departure from, or a failure to conform to, the minimal standards of care of similar practitioners under the same or similar circumstances, whether or not any patient sustained actual injury.

Included in the letter were a list of patients, the dates on which appellee had prescribed a controlled substance, primarily Biphetamine, to each patient, and the amount of the controlled substance prescribed on each date. Biphetamine is a Schedule II FDA-approved prescription drug used for the suppression of appetite in connection with the treatment of obesity.

A hearing on the foregoing charges was held before a hearing office of the State Medical Board of Ohio. Appellant presented appellee's testimony as on cross-examination, as well as a number of exhibits, including the patient records for fifty-one patients which formed the basis for the information contained in appellant's March 12, 1987 letter to appellee. Appellant also presented excerpts from the 1979 *Physicians' Desk Reference* regarding Biphetamine, an excerpt from the 1979 *Physicians' Desk Reference* regarding Obetrol, and an excerpt from *Facts and Comparisons* regarding amphetamines.

Appellee presented not only his own testimony, but that of Eljorn Don Nelson, a doctor of pharmacology, John P. Morgan, M.D., and Sister Mary George Boklege, president of the Clermont Mercy Hospital in Batavia, Ohio, as well as various articles and treatises pertaining to the prescription of drugs for purposes of weight control.

Based on the evidence presented to her, the hearing officer prepared a written report, including findings of fact and conclusions of law. The hearing officer's finding of fact are essentially as follows:

"1. Appellee wrote or otherwise authorized prescriptions for the patients at issue.

"2. With noted exceptions, appellee prescribed either Biphetamine or Obetrol for those patients for purposes of weight control. Generally, he continued such treatment over extended periods of time, often for well over a year, but each patient was required to return for weight and usually blood pressure checks in order to obtain additional prescriptions. In the case of four separate patients, amphetamines were prescribed for weight control over periods from seven to nine years.

"3. Appellee was aware that the *Physicians' Desk Reference* recommended that Biphetamine or Obetrol be used for control of obesity only as a short-term adjunct to a regimen of weight reduction.

"4. Upon beginning weight control program with his patients, appellee gave the patient diet information in addition to a drug prescription. He discussed exercise and sometimes behavior modification with the patients. His therapeutic regimen was based on the oral history given by the patient. As a result, he often prescribed Schedule II amphetamines at the outset of treatment because the patient related the ineffectiveness of other past medications.

"5. Appellee first became aware of appellant's November 1986 rule concerning the prescription of controlled substances for weight control sometime around the last week of December 1986. See Ohio Adm. Code 4731-11-03. Since that time, appellee has discontinued prescribing Schedule II controlled substances for purposes of weight control in accordance with the rule."

Based thereon, the hearing examiner concluded that appellee's patient records "fail to reflect that he selected treatment modalities based upon individual evaluation" of the patients at issue. In particular, the hearing officer noted that appellee "utilized long-term treatment with amphetamines in cases of mild, as well as severe, obesity"; and that such "treatment was generally continued, apparently without regard to the amount of weight the patient lost or gained." Although noting several of appellee's contentions, and giving passing reference to the testimony of Dr. Morgan, the hearing officer concluded that:

"Dr. Williams' prescribing practices not only disregarded the recognized risks of long-term amphetamine use, but also bore no perceivable relationship to the severity of the obesity or to the significance of results achieved from such therapy. Such practice, even when no harm to patients is shown, simply falls below minimal standards of care for medical practitioners. Furthermore, such prescribing for purposes of maintaining weight or preventing possible weight increases, especially for those patients

who had not been diagnosed as obese (Patients 29, 31, 32, and 55), has no legitimate therapeutic purpose. * * *"

Based thereon, the hearing officer determined that appellee had in fact violated the provisions of R.C. 4731.22(B) as alleged in appellant's March 12, 1987 letter. She further recommended that appellee's license to practice medicine be revoked, but that the revocation be stayed subject to a probationary term of three years with certain terms and conditions, including a requirement that appellee keep a log of all controlled substances prescribed, dispensed, or administered during the probationary period.

The board as a whole considered the hearing examiner's report and recommendation, and adopted the report, including the findings of fact and conclusions of law. However, contrary to the recommendation of the hearing officer, the board revoked appellee's license for a period of three years, and stayed the revocation pending a suspension for a minimum of one year, to be followed by a probationary term of not less than five years on certain terms and conditions, including a permanent suspension of appellee's ability to prescribe, administer, dispense, order, or possess controlled substances.

Appellee appealed to the common pleas court, which, on review of the transcript of the proceeding before the medical board, found the board's order not to be supported by reliable, substantial, and probative evidence and not in accordance with law. Appellant appeals therefrom, contending that the common pleas court erred in its determination.

We begin our analysis with the Supreme Court's pronouncement in *Univ. of Cincinnati* v. *Conrad* (1980), 63 Ohio St. 2d 108, which described the standard of review in appeals pursuant to R.C. 119.12. As the Supreme Court noted:

"In *Andrews* v. *Bd. of Liquor Control* (1955), 164 Ohio St. 275, paragraph one of the syllabus, this court held that a Court of Common Pleas must, in an appeal pursuant to this section, appraise all the evidence 'as to credibility of witnesses, the probative character of the evidence and the weight to be given it, and, if from such a consideration it finds that the * * * [administrative] order is not supported by reliable, probative, and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order * * *.'

"* * *

"In *Andrews*, this court acknowledged that determining whether an agency order is support-ed by reliable, probative and substantial evidence essentially is a question of the absence or presence of the requisite quantum of evidence. Although this in essence is a legal question, inevitably it involves a consideration of the evidence, and to a limited extent would permit a substitution of judgment by the reviewing Common Pleas Court. *"Id.* at 110-111.

Once the trial court has made its determination, our review is limited:

"* * * As we have noted time and again, the role of an appellate court, in reviewing a determination of a court of common pleas on reliable, probative and substantial evidence, is to determine if the lower court abused its discretion. * * *" *Hartzog* v. *Ohio State Univ.* (1985), 27 App. 3d 214, 216.

Hence the issue before the medical board was whether appellee's prescribing of Schedule II controlled substances for purposes of weight control fell below the reasonable standard of care and had no legitimate therapeutic purpose. The issue presented to the common pleas court was whether the medical board's determination was supported by substantial, reliable, and probative evidence and was in accordance with law. By contrast, the issue presented to us is whether the common pleas court abused its discretion in finding that the medical board's order was not supported by substantial, reliable, and probative evidence and was not in accordance with law.

While appellant presented no witnesses regarding the appropriate standard of care in this case, appellee presented the testimony of two expert witnesses, both of whom testified to a "majority" view and a "minority" view regarding the prescription of amphetamines for purposes of weight control. According to their testimony, the majority view holds that amphetamines, and Schedule II controlled substances in general, should not be prescribed for more than short periods of four to six weeks in efforts to control weight. On the other hand, the minority view believes that the prescription of amphetamines for weight control may properly extend over long periods of time. While neither of appellee's experts themselves subscribed to the minority view, both acknowledged it as a viable theory for weight control. As a result, in response to an inquiry as to whether the record contained any evidence that appellee had sold, prescribed, or given away or administered drugs for other than legitimate therapeutic purposes, Dr. Nelson responded: "The opinion is that I don't see any indication of that in the records that I was given

to review." When both experts were asked if appellee departed from minimal standards of care of similar practitioners under the same or similar circumstances, Dr. Nelson responded: "My opinion is that the standard of care that's expressed in the records is consistent with the standards for prescribing these medications for the time period that's indicated." Similarly, Dr. Morgan stated: "Williams did not depart from medical standards of care."

Given the foregoing, appellee suggests that the referee properly concluded that appellant had simply failed to provide enough evidence on which to find appellee in violation of R.C. 4731.22(B). Appellant, however, relying on *Arlen v. State* (1980), 61 Ohio St. 2d 168, contends that it was not required to present testimony that appellee's conduct fell below the standard of care. Specifically, appellant relies on the language of *Arlen* which states:

"For the reasons hereinafter set forth, expert testimony as to a standard of practice is not mandatory in a license revocation hearing and the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care." *Id.* at 172. See, also, *id.* at syllabus.

In *Arlen*, the physician was charged with improperly dispensing drugs by writing prescription for Schedule II narcotics in one name, only to allow that individual to distribute the drugs to addicts to allay the effects of abrupt withdrawal. The court held that the medical board did not need to present expert testimony in that instance, as the board's expertise allowed it to conclude that one may not properly so dispense drugs. The court first noted:

"* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decisions on facts with boards or commissions composed of men equipped with the necessary knowledge and experience pertaining to a particular field. * * *" *Id.* at 173 (quoting *Farrand v. State Medical Board* (1949), 151 Ohio St. 222, 224).

The court concluded:

"* * * The very purpose for having such a specialized technical board would be negated by mandating that expert testimony be presented. Expert opinion testimony can be presented in a medical board proceeding, but the board is not required to reach the same conclusion as the expert witness. The weight to be given to such expert opinion testimony depends upon the board's estimate as to the propriety and reasonableness, but such testimony is not binding upon such an experienced and professional board." *Id.* at 174.

Appellant urges that we apply *Arlen* in this case, and relieve the medical board of any obligation to present expert testimony regarding the standard of car appropriate to the facts herein. We note, though, that, just as the record indicates the existence of "majority" and "minority" views on the subject of prescribing amphetamines, majority and minority views exists on the issue of the need for expert testimony supporting a specialized board's decision. On the latter subject, Ohio takes the minority view, in that a majority of the jurisdictions in which the highest court has considered the issue requires that expert testimony supporting a board's decision appear in the record. See, *e.g., In re Schramn* (S.D. 1987), 414 N.W. 2d 31, 37; *Gilbert v. State* (Wisc. 1984), 349 N.W. 2d 68, 84; *Dailey v. North Carolina State Board of Dental Examiners* (N.C. 1983), 309 S.E. 2d 219, 227-228; *Arthurs v. Board of Registration in Medicine* (Mass. 1981), 418 N.E. 2d 1236, 1244; *Dotson v. Texas State Board of Medical Examiners* (Tex. 1981), 612 S.W. 2d 921, 923-924; *Hake v. Arkansas State Medical Board* (Ark. 1964), 374 S.W. 2d 173, 176; *Smith v. Department of Registration & Education* (Ill. 1952), 106 N.E. 2d 722, 730; *McKay v. State Board of Medical Examiners* (Colo. 1938), 86 P. 2d 232, 236. The Ohio Supreme Court's *Arlen* decision places Ohio in the group of jurisdictions with high courts that have held that expert testimony is unnecessary. See, *e.g., Appeal of Beyer* (N.H. 1982), 453 A. 2d 834, 837; *Ferguson v. Hamrick* (Ala. 1980), 388 So. 2d 981, 983; *Jaffe v. State Department of Health* (Conn. 1949), 64 A. 2d 330, 349-350, quoted in *Arlen, supra.*

The primary rationale for the majority approach to the issue of expert testimony is the need to preserve a record for judicial review. The Supreme Judicial Court of Massachusetts in *Arthurs, supra*, stated the rationale as follows:

"* * * The board, however, argues that the since most of the members of the board are experts, the board can use its expertise without the evidentiary basis of that expertise appearing in the record. 'This startling theory, if recognized, would not only render absolute a finding opposed to uncontradicted testimony but would render the right of appeal completely inefficacious as well. A board of experts, sitting in a quasi-judicial capacity, cannot be silent witnesses as well

as judges.' * * *" *Id.* at 1244 (quoting *New Jersey Bd. of Optometrists* v. *Nemitz* (N.J. Super. 1952), 90 A. 2d 740.) See, also, *In re Schramm, supra,* at 35-36; *McKay, supra,* at 236

The approach of the majority jurisdictions would also tend to lessen the problems of lack of notice and lack of an opportunity to cross-examine. In essence, appellant's contentions would require a physician to determine, without the benefit of cross-examination or explicit testimony, what the board's expert opinion, individually or collectively, might be, and then to present evidence to refute that opinion. Indeed, in some instances, the physician would be relegated to presenting some expert testimony in the offhand change that the testimony may be able to persuade the board that its own opinion, whatever that may be, is invalid.

We do not intend to suggest that the Supreme Court incorrectly decided *Arlen* or that we are not bound by the *Arlen* decision. Nevertheless, *Arlen* is not entirely dispositive of the present case, since *Arlen* merely held that expert testimony is unnecessary. The *Arlen* court did not find that judicial review, notice, or meaningful cross-examination were unnecessary. In *Franz* v. *Board of Medical Quality Assurance* (Cal. 1982), 642 P. 2d 792, the California Supreme Court, like the Ohio Supreme Court in *Arlen,* noted:

"* * * A unique efficiency of many agencies is the professional competence they bring to matters delegated to them by the Legislature. We think an agency factfinder may, for example, reject uncontradicted opinion testimony that his own expertise renders unpersuasive. [Citations omitted.] A fortiori, the same expertise may govern even when the record contains no opinion evidence at all." *Id.* at 799.

However, the *Franz* court also noted that, even though the board had expertise, a court "cannot impute similar knowledge to a reviewing judge untrained in medical matters." *Id.* at 798. The court also found that:

"* * * [D]ue process requires, when is an adjudication an agency intends to rely on members' expertise to resolve legislative-fact issues, that it notify the parties and provide an opportunity for rebuttal. * * *" *Id.* at 799.

The court concluded:

"The agency's notification must be complete and specific enough to give an effective opportunity for rebuttal. It must also held build a record adequate for judicial review. * * *" *Id.* at 800.

Footnote 8, states:

"Arguably the notification should include a brief statement explaining the opinion held by the adjudicative body, the reasons for the opinion, and the members' qualifications to hold it."

We find the approach of the California Supreme Court in *Franz* persuasive. First, as we have previously noted, *Franz* is consistent with *Arlen.* Second, we believe that the *Franz* approach will effectuate, not only the General Assembly's intent in creating a specialized board, but also the legislature's subjection of the board to the procedures and appellate review provisions of R.C. Chapter 119. See R.C. 4731.22(B).

In addition, reliance upon *Arlen* in the present case would be an extension of *Arlen* beyond its original factual context. More particularly, in this case, appellee presented two experts who testified that a valid and viable minority view exists which holds that long-term prescription of amphetamines for purposes of weight control is a legitimate therapeutic course of treatment and conforms with a reasonable standard of care. While appellee unquestionably failed to comply with the majority view, the record reveals nothing to suggest that appellee deviated from minority view or that that view falls below reasonable standards of care. Whether or not the board subscribes to the minority view does not eliminate, on the evidence in the record, the minority view and appellee's compliance therewith.

In contrast, the physician in *Arlen* presented no expert testimony that his practice conformed to an accepted medical view. Moreover, a specific provision in R.C. 3709.06(A) prohibited Dr. Arlen's conduct. See *Arlen, supra,* at 175-176. *Arlen* thus seems closer to a case in which no expertise is needed to determine the matter because the case involves "the commission of acts which are blatantly illegal or improper." *Schram, supra,* at 37. See, also, *Franz, supra,* at 800 ("lay comprehension standard").

We therefore conclude that, although the board does not have to base its decisions on testimony, the board's decisions ordinarily require the support of reliable, probative, and substantial evidence in the record. In addition, in cases in which the board relies upon specialized medical knowledge, the board must provide the physician with notice of an opportunity to refute the evidence upon which the board relies.

The facts of the present case illustrate the difficulty of reviewing a decision of the board when the basis of the decision does not appear in the record. Subsequent to the time in which

appellee committed the alleged violations for which he was sanctioned, appellant promulgated Ohio Adm. Code 4731-11-03, entitled "Schedule II controlled stimulants." The rule reflects the position that appellee's witnesses characterized as the majority view. The rule also states that a violation constitutes grounds for discipline under R.C. 4731.22(B)(2), (B)(3), and (B)(6), which were the statutory provisions that formed the basis for the charges against appellee. Given the lack of evidence on the standard of care used by the board, one could well conclude on this record that the board simply ignored appellee's evidence on the minority view and retroactively applied Ohio Adm. Code 4731-11-04. Admittedly, the board can, in its discretion, choose to resolve a dispute through adjudication as well as rule-making, *Hamilton Cty. Bd. of Mental Retardation & Development Disabilities* v. *Professionals Guild of Ohio* (1989), 46 Ohio St. 3d 147, paragraph two of the syllabus; *National Labor Relations Bd.* v. *Bell Aerospace Co. Div. of Textron Inc.* (1974), 416 U.S. 267, 291-295, and "[e]very case of first impression has a retroactive effect, whether the new principle is announced by a court or by an administrative agency." *Blue Cross* v. *Ratchford* (1980), 64 Ohio St. 2d 256, 263 (quoting *Securities & Exchange Comm.* v. *Chenery* (1947), 332 U.S. 194, 203). However, the board arguably could not apply the rule retroactively without considering whether appellee's conduct conformed to the standard that existed at the time. See *Bowen* v. *Georgetown Univ. Hospital* (1988), 488 U.S. ___, 102 L. Ed. 2d 493, 500. ("Retroactivity is not favored in the law * * *. [A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.")

In short, we conclude that the common pleas court did not abuse its discretion in finding the order of the board not supported by substantial, reliable, and probative evidence.

In addition, we find aspects of the board's order which are not in accordance with the law. First, the hearing officer's report is deficient. While the hearing officer reported some of the evidence, she completely failed to mention other pertinent testimony, such as that of the expert witness, Dr. Morgan. Similarly, she failed to report certain aspects of appellee's testimony regarding his prescribing Biphetamine. See *Ohio State Medical Bd.* v. *Ioannidis* (June 18, 1987), Allen App. No. 1-86-52, unreported.

Finally, although the case law indicates that our authority to review penalties imposed by an agency is relatively limited in cases in which reliable, probative, and substantial evidence supports the agency's findings, see *Henry's Cafe, Inc.* v. *Bd. of Liquor Control* (1959), 170 Ohio St. 233, paragraph three of the syllabus, in the present case, we find it necessary to briefly comment on the penalty imposed upon appellee. Specifically, the hearing officer recommended a three-year probationary period during which time appellee would be allowed to continue to prescribe controlled substances under the supervision of the board. In rejecting the hearing officer's recommendation, the board revoked appellee's license for three years, stayed that revocation pending a one-year suspension and three-year probationary period. However, appellee was to be deprived permanently of his ability to prescribed all controlled substances. For a general practitioner, deprivation of the right to prescribe all controlled substances in effect virtually deprives him or her of the ability to practice medicine. While that may be an appropriate punishment in certain instances, the facts of this case do not support such a severe sanction, as the evidence indicates that appellee at all times complied with the reasonable standard of care as held by the minority view; and that when he learned of the board's order prohibiting the prescription of amphetamines for purposes of weight control, he ceased the prohibited activity immediately. In such circumstances, a total revocation of appellee's ability to prescribe controlled substances in any aspect of his practice is unduly harsh and unnecessarily deprives appellee of the ability to practice medicine.

Accordingly, we overrule appellant's single assignment of error. The judgment of the common pleas court is affirmed.

*Judgment affirmed.*

McCORMAC and COX, JJ., concur.
COX, J., of the Gallia County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.