466 N.W.2d 163 (1991)
In the Matter of the DETERMINATION OF THE ORDINARY HIGH WATER MARK AND THE OUTLET ELEVATION FOR BEAVER LAKE.
Nos. 17088, 17125.
Supreme Court of South Dakota.
Argued November 27, 1990.
Decided February 20, 1991.
*164 Harold H. Deering, Jr., Asst. Atty. Gen., Sioux Falls, Roger A. Tellinghuisen, Atty. Gen. (on brief), Pierre, for appellee Division of Water Rights.
David R. Gienapp, Arneson, Issenhuth & Gienapp, Madison, for appellant Steve Becker.
*165 Gary L. Richter, Asst. Atty. Gen., Pierre, for appellee South Dakota Dept. of Game, Fish & Parks.
HENDERSON, Justice.

PROCEDURAL HISTORY/ISSUES
A Petition was filed on April 16, 1987, by the Town of Humboldt and others, requesting that the Water Management Board (WMB) clarify Water Right No. 865-3 held by the Department of Game, Fish & Parks (GFP). The Petition also requested that an outlet elevation and ordinary high water mark (OHWM) be established for Beaver Lake.
After a hearing on this matter WMB issued a decision on March 22, 1989, setting the OHWM at 1651.6 mean sea level (msl) and the outlet elevation at 1651.7 msl. WMB also determined that the slough north of the boundary of Beaver Lake was not part of the Lake. GFP appealed this decision to the Circuit Court for Hughes County, on April 5, 1989. Steve Becker (Becker), owner of the slough, intervened in the appeal on December 18, 1989. After argument was heard, the circuit court affirmed WMB's OHWM and outlet elevation determinations, but reversed the issue of the slough.
Becker filed a Notice of Appeal alleging:
(1) the circuit court erred in ruling that the WMB's decision, excluding the slough as part of Beaver Lake, was erroneous and remanding the matter to WMB; and
(2) the circuit court erred in determining that the issue on appeal to the circuit court relating to whether or not a body of water was part of Beaver Lake was wholly a question of law.
Notice of Review was filed by GFP on April 30, 1990. It inquires: Should WMB be required to make a finding or determination that the water is capable of use by the public for public purposes? The circuit court held it was necessary.
In all matters, we affirm the circuit court's reversal of WMB, addressing both issues as one.

FACTS
Beaver Lake is located roughly one mile southeast of Humboldt, South Dakota in Minnehaha County. Beaver Lake, a kettle lake, was formed during the Ice Age by the melting of a large block of ice buried beneath a glacial drift. Essentially, Beaver Lake is a closed basin, outflowing through an outlet during times of very high water.
The area in dispute is the northern portion of Beaver Lake, commonly referred to as a slough, approximately 40 acres in size. The slough begins at the northern boundary of the drainage basin for Beaver Lake. Surface water drains from the north through the slough in a southerly direction.
It is undisputed that the OHWM of Beaver Lake, established by WMB, is 1651.6 feet msl. It is also undisputed that the outlet level elevation of Beaver Lake, established by WMB, is 1651.7 feet msl, which is .1 feet above the ordinary high mark. Thus, these determinations are not at issue in this appeal.
Prior to 1934, a road was constructed on top and over the bed of Beaver Lake at an elevation lower than the OHWM of Beaver Lake by adjacent landowners. This road was used to move small equipment back and forth. The main portion of Beaver Lake and the slough to the north, dissected by the road, have one continuous connected OHWM of 1651.6 feet msl. At any time the water level of Beaver Lake attains an elevation of 1650 feet msl, the water flows within culverts. These culverts were constructed under the road to allow the free flow of water within the area bounded by the OHWM of Beaver Lake.
WMB concluded that, based on historical records and the existence of the road constructed across the lake, the northern portion thereof consisting of approximately 40 acres (the slough) was not part of Beaver Lake. WMB amended GFP's water right to that amount of water consistent with the newly established OHWM of 1651.6 feet msl and outlet elevation of 1651.7 feet msl, excluding therefrom the area to the north consisting of approximately 40 acres which is the subject on appeal. WMB also concluded *166 that although the body of water (lake and slough) were joined at times of extraordinary high water, such a finding did not require a conclusion that the slough was part of the lake.

Circuit Court's Holding
On appeal, the circuit court affirmed WMB's decision concerning the OHWM and the outlet elevation, but reversed as to the slough. The circuit court concluded that WMB erred in relying on SDCL 43-17-23[1] in establishing the boundary of the lake because the road did not impact the OHWM. It also stated that WMB further erred by not establishing a low water mark and by not making a determination if the water is capable of use by the public for public purposes. The circuit court remanded the slough issue to WMB for further action consistent with the circuit court decision.

DECISION
The circuit court did not err in ruling that WMB's decision, excluding the slough as part of Beaver Lake, was erroneous and remanding the matter back to WMB.
Initially, we should note our standard of review for administrative appeals. Recently, this Court succinctly stated the analysis which must be employed when examining an administrative appeal in Beville v. Univ. of S.D./Bd. of Regents, 420 N.W.2d 9 (S.D.1988):
The standard of review for administrative appeals (SDCL 1-26) has recently been clarified in Permann v. S.D. Dept. of Labor, 411 N.W.2d 113 (S.D.1987). Initially, we must determine whether the holding involves a finding of fact or conclusion of law. Schramm v. State Board of Dentistry, 414 N.W.2d 31 (S.D. 1987). This distinction must be made to determine "the proper standard of review; that is, clearly erroneous as opposed to mistake of law." Schramm, supra; Permann, supra. Questions of law such as statutory interpretation of SDCL 1-26 are reviewed by this court de novo. Schramm, supra. No deference is given to the conclusions of law by the trial court or the agency. However, as to questions of fact, SDCL 1-26-36 provides that great deference shall be given to agency findings. Thus, the decision of the administrative agency must be upheld unless, in light of the entire record, this decision is clearly erroneous or unless the court is left with a definite and firm conviction that a mistake has been made. Schramm, supra; Barkdull v. Homestake Mining Co., 411 N.W.2d 408 (S.D.1987); Permann, supra. State Division of Human Rights ex rel. Miller v. Miller, 349 N.W.2d 42 (S.D.1984); Dakota Harvestore v. S.D. Department of Revenue, 331 N.W.2d 828 (S.D.1983).
As discussed above, the proper scope of review in a case such as this, when the issue is a question of law, is that the decisions of the administrative agency and the circuit court are fully reviewable.
The purpose of determining the OHWM of Beaver Lake is to define the boundaries of the lake for public use. As was stated in S.D. Wildlife Federation v. Water Management Board, 382 N.W.2d 26 (S.D. 1986), wherein we drew upon settled law in this state:
The adjacent, riparian or upland owner takes to the edge of public lakes at the ordinary low water mark. See SDCL 43-17-2; Anderson v. Ray, 37 S.D. 17, 24, 156 N.W. 591, 593 (1916); Flisrand v. Madson, 35 S.D. 457, 470, 152 N.W. 796, 801 (1915). The riparian owner's title, however, is absolute only to the extent of the OHWM. As to the intervening shore between the ordinary high and ordinary low water marks, the riparian owner's title is qualified or limited by and subject to the public's right of access and use for navigating, boating, fishing, fowling and *167 like public purposes. Flisrand, 152 N.W. at 801. See also, State ex rel. Clark v. Deisch, 38 S.D. 560, 564, 162 N.W. 365, 366 (1917). Thus, the riparian owner may not interfere with or prevent the public's use or lawful access. The State of South Dakota, on the other hand, owns the bed of the lake or that portion below the low water mark. Hillebrand v. Knapp, 65 S.D. 414, 418, 274 N.W. 821, 822 (1937).
As mentioned previously, WMB based their decision, that the slough was not part of the lake, on the fact that the two bodies of water were connected only at times of extraordinary high water and that the two were separated by a roadway. This decision was reversed by the circuit court. It concluded that WMB erred in applying the principle that although the lake and slough were joined at times of extraordinary high water, that finding did not require the conclusion that the slough was part of the lake. SDCL 43-17 sets forth the procedure for the determination of the OHWM of Beaver Lake. In S.D. Wildlife Federation, we defined OHWM as that level where there is a distinct mark which evidences erosion, changes in the character of the soil, and destruction of terrestrial vegetation, which have occurred under the ordinary and continuous conditions of the lake, disregarding periods of extreme and periodic freshets. In other words, both areas involved would be found to be one body of water at the water mark which WMB found to be the OHWM[2]; the high level reached by the waters under ordinary and continuous conditions, unaffected by extreme conditions.
WMB agreed that normally the OHWM establishes the boundary of a lake, but it contended that historical evidence demonstrates the slough and lake have been joined extremely infrequently. Although this assertion is true and the joining of the two bodies of water at times of extraordinary high water does not necessarily compel the conclusion that the two bodies of water are one, we agree with the circuit court that WMB erred in applying this principle to the present case.
WMB asserted that but for the existence of the road between the lake and slough, the OHWM would establish the boundary of the lake, relying on SDCL 43-17-23. This statute mandates that natural factors take precedence in determining an OHWM. Influences caused or created by human beings are to be disregarded unless they have lawfully existed for such a period of time that they could be deemed the equivalent of natural conditions. S.D. Wildlife Federation at 33. Although it can be advocated by factual hypothesis that the man-made road separating the two areas has existed long enough to be considered a "natural condition" under SDCL 43-17-23, the man-made influence must lower or raise the OHWM of a lake. In the present case, simply put, the road did not raise or lower the OHWM of the lake or slough.
Becker argues that WMB relied upon evidence such as meander line surveys, maps and photographs to determine the boundary of the lake. However, this evidence alone is not sufficient. The boundary of a lake must also be determined in reference to the OHWM, the ordinary low water mark and by determining whether the water is capable of use by the public for public purposes. SDCL 43-17-2; Flisrand, 152 N.W. at 800.
Since no ordinary low water mark was established and no findings and conclusions were entered as to whether any water in the slough is capable of public use, we affirm the circuit court reversing WMB, thus remanding the issue of whether the slough is part of the lake for reconsideration in accordance with the circuit court's order. SDCL 1-26-36 provides in pertinent part: "The court may ... remand the case for further proceedings." The decision to remand lies within the judicial discretion of the trial court and our review is whether it abused that discretion. Matter of State & City Sales Tax Liability, 437 N.W.2d 209 *168 (S.D.1989). In the present case, the circuit court correctly determined that WMB had erroneously relied on SDCL 43-17-23, failed to determine the ordinary low water mark, and also failed to determine whether the water is capable of use by the public for public purposes in accordance with well-settled South Dakota law. As questions of law are involved, the decisions of the administrative agency and the circuit court are fully reviewable. Under Beville, we have fully reviewed the agency and the circuit court's decision.

NOTICE OF REVIEW
By Notice of Review, GFP inquires: Should WMB be required to make a finding if the water is capable of use by the public for public purposes? As mentioned previously, the circuit court properly included this question in the remand order. According to this Court's reasoning in Flisrand, supra, it is clear that determining if a body of water is capable of public use is of critical importance to determine a lake's boundary. We hold it was not an abuse of discretion to remand this issue to WMB. Matter of State & City Sales Tax Liability, supra.
Affirmed.
MILLER, C.J., WUEST and SABERS, JJ., and MORGAN, Retired Justice, concur.
HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the court at the time this case was considered, did not participate.
NOTES
[1] SDCL 43-17-23 provides:

Natural factors given precedence in water marksWhen man-made influences considered. In determining the ordinary high water mark, natural factors take precedence. Man-made influences, either those that have been constructed to lower the mark or those constructed to raise the mark, shall be disregarded unless the influences have been lawfully constructed or have existed and been accepted for a period of time determined by the water management board to be the equivalent of natural conditions.
[2] Here, WMB found that the ordinary high water mark was 1651.6 feet msl and there is no dispute that the lake and slough are one body of water at any level over 1650 feet msl.